**UNITED STATES v. BAZZELL.**

**UNITED STATES v. LASBY et al.**

Nos. 10280, 10285.

United States Court of Appeals
Seventh Circuit.

March 7, 1951.

Rehearing Denied April 25, 1951.

880

Joseph H. Goldenhersh, East St. Louis, Ill., William M. Giffin, A. D. Van Meter III, Robert B. Oxtoby and G. William Horsley, Springfield, Ill., for appellants.

Howard L. Doyle, U. S. Atty., Marks Alexander and George R. Kennedy, Asst. U. S. Attys., Springfield, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

KERNER, Circuit Judge.

These are appeals from a judgment of conviction and sentence after a jury had found defendants guilty under an indictment containing three counts. The first count charged defendants, in violation of the Federal Kidnaping Act, 18 U.S.C.A. § 1201, with kidnapping one Mildred Tedrick, transporting her in interstate commerce and holding her for the purpose of placing her in a house of prostitution, and that she was harmed after having been kidnaped. The second count charged the same offense, but omitted the allegation that Mildred was not released unharmed. The

third count charged that defendants, in violation of § 371 of the Criminal Code, 18 U.S.C.A. § 371, conspired with each other to commit the crime charged in counts one and two. The overt acts alleged were that defendants traveled to Kentucky and back to Illinois; that they entered a house of prostitution in Bowling Green, Kentucky; that Bazzell struck the girl in Bowling Green, Kentucky, as well as in East St. Louis, Illinois; and that he· brought the girl to a house of prostitution in Madison, Illinois. Bazzell, appellant in No. 10280, was convicted on counts one and three, and Lasby and Ryan, appellants in No. 10285, were found guilty only on the third count of the indictment. In this court the appeals were consolidated.

Bazzell's first contention is that there was no kidnaping under the statute, that is to say, the evidence does not sustain the verdict. As to this contention, it is well to remember that under the long and well established law we may consider only that evidence favorable to the plaintiff. We are not permitted to weigh conflicting evidence, but must test the sufficiency of the proof upon the basis of what the jury had the right to believe, and not upon what defendant claims the jury should have believed.

There was evidence that shortly after Christmas, 1947, the girl went to work as a waitress in a tavern operated by Bazzell, and continued to work, intermittently, until March, 1948, at which time he took her to a house of prostitution near Collinsville, Illinois, and told her she must work as a prostitute. The girl was scared of him, and from that time until July, 1949, she worked as a prostitute in various houses of ill fame and gave her earnings to Bazzell. About July 6, 1949, Bazzell took the girl to a brothel in Bowling Green, Kentucky, and made arrangements for her to work there as a prostitute. She worked there until December 5, and until shortly before Thanksgiving gave her earnings to Bazzell, but after that date she discontinued the payments. December 5, Bazzell came to· the brothel, but the girl had left the house several hours before his arrival. Bazzell, upon learning of her departure, said that when he saw her he would "whip her for slipping away." The girl returned to the brothel on December 22 and remained until January 26, but did not remit any money to Bazzell.

On the evening of January 25, 1950, Bazzell, accompanied by Lasby and Ryan, drove from Illinois to Bowling Green in Bazzell's automobile. The three men entered the house where the girl worked at about 1 o'clock A.M. on January 26. They were admitted by the house manager. Ryan and Lasby each kept his right hand in his coat pocket, and each stationed himself at a door, and Bazzell told them, "if anyone moves, let them have it." Bazzell then seized the girl by the hair, kicked her in the back, struck her on the head and twisted her arm. She repeatedly told Bazzell that she would not go with him, but he forcibly made her accompany him to her room on the second floor of the house where he took all of her money, and obtained her clothes and loaded them into his automobile. Bazzell then collected from the madam in charge of the brothel the money which the girl had earned that day, after which the three men and the girl got into Bazzell's automobile and drove to East St. Louis, Illinois, arriving there about 7 o'clock on the morning of January 26. While en route, Bazzell told the girl that if she had endeavored to escape "she would not have gotten very far, because Bozo [Lasby] has a German Luger, and it will shoot a good block."

Upon their arrival in East St. Louis, Bazzell registered the girl in a tourist court, transferred her clothes into a cabin, and the three men proceeded to a tavern. About noon, Bazzell sent Ryan to bring the girl to the tavern, and later in the afternoon Bazzell took her back to the tourist court. While there he beat her about the head and ear with a blackjack, striking her a number of times, and stated that he was "going to straighten her out for taking off" and "teach her not to· ever take off again." He remained in the cabin with her that night. The next evening, January 27, he took the girl to work at a house of ill fame

in Madison, Illinois, several miles from East St. Louis, where she worked that evening until she was taken into custody by agents of the F. B. I. She was examined by a physician and was found to be suffering from numerous contusions and abrasions about the head and shoulders, and the inside of her ear canal was swollen.

The Federal Kidnaping Act punishes anyone who knowingly transports in interstate or foreign commerce any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom, or reward or otherwise, except, in the case of a minor, by a parent.

Bazzell insists that there is no evidence of any restraint or any use of weapons; that no force was exercised, or if force was used, the girl's actions thereafter were entirely voluntary.

■ Concededly, before a defendant may be convicted under the statute in question, there must be an unlawful seizure, a holding for a specific purpose, and an interstate transportation of the victim, and where the indictment charges that the victim was harmed, there must be proof that she was not released unharmed.

In Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 397, 80 L.Ed. 522, the Court held that the Act broadly prohibited transportation in interstate commerce of persons who were being unlawfully restrained "in order that the captor might secure some benefit to himself." And in Chatwin v. United States, 326 U.S. 455, 460, 66 S.Ct. 233, 90 L.Ed. 198, the Court recognized that the holding or restraint could be achieved by mental as well as by physical means.

■ In our case, as already noted, there was testimony that the girl was afraid of Bazzell and that she gave him her earnings up to November, 1949. It is undisputed that on January 25, 1950, Bazzell drove to Bowling Green, Kentucky, where he picked up the girl and transported her to Illinois. There was testimony that when she refused to leave Bowling Green, Bazzell struck and kicked her and twisted her arm, and that during this time Lasby and Ryan, strangers to her, were guarding the doors, each with his hand in his pocket, under orders from Bazzell that "if any one moves, let them have it." And there was testimony that after the three men and the girl left the house in Bowling Green, the house manager spoke over the telephone to the girl's mother at Patoka, Illinois, and to the Sheriff of Fayette County, Illinois. As a result of these talks, the manager of the house was interviewed by an agent of the F. B. I., and on January 28 Bazzell was taken into custody on a warrant charging him with kidnaping. In addition, there was testimony that before taking the girl to work again as a prostitute at Madison he struck her with a blackjack and told her he would teach her not to ever take off again. We have examined the original records consisting of 385 pages of typewritten testimony and the circumstantial evidence and the reasonable inferences flowing therefrom. It proved beyond a reasonable doubt that Bazzell unlawfully seized and carried the girl away from Kentucky into Illinois by force and against her will, in the sense that her resistance was overcome by physical force and threats which put her in fear of her life, and that she was carried away for the purpose of placing her in a house of prostitution in order that Bazzell might secure some benefit to himself.

■ We next consider Bazzell's contention that the evidence fails to show that the offense was committed within the jurisdiction of the court. He says the transportation was from Kentucky into Illinois and to East St. Louis in the Eastern District of Illinois, hence if any offense was committed, it was not committed in the Southern District of Illinois, as laid in the indictment. We think this venue point is without merit.

■ Jurisdiction depends upon where the crime is committed. As already noted, the indictment alleged several overt acts, one of which was that Bazzell brought the girl to a house of prostitution in Madison, a city in the Southern District of Illinois, and, as we have shown, took her to the house of prostitution in Madison for the purpose of prostitution, where she worked until she was taken into custody. Thus

there was direct proof that the crime was committed in the Southern District of Illinois. See United States v. Downing, 2 Cir., 51 F.2d 1030.

■ Finally, Bazzell contends that the court erred in admitting a blackjack in evidence. It was found at Bazzell's apartment when he was arrested. The argument is that there was no evidence that the blackjack had any connection with the seizure or detention. As we have observed, the girl testified that Bazzell had beaten her with a blackjack while she was being held at East St. Louis. She also testified that the blackjack in question was like the one used on her, that it was the same type. And there was the testimony of the physician that the injuries to the girl, particularly the injury to the ear canal, were caused by blows, and in his opinion could not have been caused by a blow from a fist or open hand. In this situation, it was within the discretion of the trial judge to admit the blackjack in evidence. Moreover, in view of this record clearly proving Bazzell's guilt, we believe we can say with fair assurance that the admission of the blackjack had no material effect upon the verdict of the jury, hence its admission was not reversible error.

Appellants Lasby and Ryan contend (1) that there was no kidnapping or conspiracy; (2) that the District Court was without jurisdiction because neither the conspiracy nor an overt act by them took place within the jurisdiction of the court; (3) that where a verdict of not guilty is rendered as to the substantive count in an indictment, there can be no verdict of guilty on a conspiracy count unless there is other evidence and other overt acts proven; (4) that where there is a special statute dealing with a conspiracy to commit a certain crime, it excludes the use of the general conspiracy statute; (5) and that the instruction on the conspiracy count was erroneous.

■ First. The grounds urged for reversal are that there was no kidnaping and no conspiracy. What we have said in the Bazzell appeal regarding the claim that there was no kidnaping is applicable here. As to the contention that the judg-ment must be reversed because there was no direct evidence of conspiracy, it will be enough to say that the Government need not furnish direct proof of the unlawful plan or agreement. The charge may be sustained by evidence showing the unlawful act, or by proof of other facts from which the natural inference arises that the unlawful acts were in furtherance of a common design of the alleged conspiracy. A combination of two or more persons by concerted action to accomplish a purpose either criminal or otherwise unlawful comes within the accepted definition of conspiracy. United States v. Hutto, 256 U.S. 524, 528, 41 S.Ct. 541, 65 L.Ed. 1073. It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns. American tobacco Co. v. United States, 328 U.S. 781, 809, 66 S.Ct. 1125, 90 L.Ed. 1575. Nor is it essential that the agreement be in any specified form or that any particular words be used. It is sufficient if the minds of the parties meet and join in an understanding way to accomplish a common purpose, Reavis v. United States, 10 Cir., 106 F.2d 982. The crime is frequently established as a result of inferences drawn from the acts of the persons accused. United States v. Holt, 7 Cir., 108 F.2d 365, 368, and United States v. Glasser, 7 Cir., 116 F.2d 690.

In United States v. Morley, 7 Cir., 99 F. 2d 683, 685, we said: "Only by weighing the acts of the accused against his professions of innocence when they are inconsistent, can the fact finding body reach an intelligent verdict or finding. If the accused's acts and assurances are reconcilable, then no jury question is presented and the defendant should be dismissed. If, however, there be irreconcilability—if the acts of the accused dispute his assurances of innocence and the conflict is vital, then the court must let the jury weigh the conflicting evidence and decide." Here counsel for appellants say there were but three inferences that could be drawn from the circumstances—(a) they were guarding the door at Bowling Green to keep the girl from running away and to assist in a kidnaping; (b) they didn't want anyone to interfere in a lover's quarrel; and (c) they

were just standing around waiting for Bazzell and the girl to get ready to leave. We agree, but it was for the jury to decide. Under the facts disclosed we think there was ample proof of acts and reasonable and justifiable inferences to be drawn therefrom to sustain the verdict of guilt, hence appellants' motion for acquittal was properly denied.

**Second.** The ground urged for reversal is that the venue was wrongly laid. In disposing of this point we would be content to refer to what we have already written regarding a similar contention made by Bazzell, were it not for the fact that these appellants claim that the trip from Bowling Green ended at East St Louis in the Eastern District of Illinois. Even so, all the defendants were charged with having conspired in the county of Madison, Illinois, in the Southern Division of the Southern District of Illinois, and at East St. Louis in the Eastern District of Illinois, and at Bowling Green, in the State of Kentucky. It is undisputed that they drove either from Washington Park or from Fairmont City, Illinois. The gist of the offense of a conspiracy is an agreement among the conspirators to commit an offense, attended by an overt act by one or more of the conspirators to effect the object of the conspiracy. In such a situation, if any overt act in furtherance of the conspiracy occurs within the jurisdiction of the trial court, then that court has jurisdiction of the cause even though other overt acts may have been committed or the conspiracy entered into in a different district or state. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, and Hudspeth v. McDonald, 10 Cir., 120 F.2d 962.

**Third.** Appellants argue that the verdict is inconsistent, and assert that since they were found not guilty of the substantive offense, their conviction of conspiracy was improper and cannot stand. We cannot agree.

As to the argument that the verdict is inconsistent, it will be enough to say that where a defendant is charged by two or more counts in an indictment, consistency between the verdicts on the several counts is not necessary. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356; United States v. Denny, 7 Cir., 165 F.2d 668; and United States v. Coplon, 2 Cir., 185 F.2d 629, 633. A verdict of acquittal on one count does not invalidate a verdict of guilty on another count, although the same evidence is offered in support of each. Garrison v. Hunter, 10 Cir., 149 F.2d 844, 845. See also United States v. Pandolfi, 2 Cir., 110 F.2d 736.

Appellants also insist that in order to sustain a finding of guilty on the conspiracy count there must be evidence over and above that upon which they were found not guilty on the kidnaping counts. In support of this contention they cite Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180. In that case the defendant had been indicted in two separate indictments one of which was conspiracy. The conspiracy was tried first, and the jury returned a verdict of not guilty as to Sealfon. Thereafter Sealfon and one Greenberg were tried on the substantive offense. At the trial, the theory of the prosecution was that Sealfon had aided and abetted Greenberg in the commission of the substantive crime. This could be true only if the Government could prove that a certain letter written by Sealfon had been sent pursuant to an agreement to defraud the United States. The prosecution endeavored to prove that fact. Because it failed in that proof, the Supreme Court ruled the second prosecution was barred.

A conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. United States v. Rabinowich, 238 U.S. 78, 85, 35 S.Ct. 682, 59 L.Ed. 1211. Its distinguishing element is the combination of several persons for an unlawful end. The conspiracy remains none the less a crime because by its success an additional crime has been committed. Sneed v. United States, 5 Cir., 298 F. 911, 913. Consequently, the substantive offense is not merged in the charge of conspiracy, Ellerbrake v. United States, 7 Cir., 134 F.2d 683, 685, and the parties may be punished for their agreement to commit a crime as well as for the completed crime. If of-

fenses are distinct in law they are not identical, regardless of how closely they are connected in point of fact. The test laid down by the adjudicated cases as to the identity of offenses under separate statutory provisions is, does each statutory provision require proof of a fact which the other does not. Montrose Lumber Co. v. United States, 10 Cir., 124 F.2d 573, 575; Robinson v. United States, 10 Cir., 143 F.2d 276; and Catrino v. United States, 9 Cir., 176 F.2d 884. See also Gavieres v. United States, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489; and Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306. Cf. United States v. Curzio, 3 Cir., 170 F.2d 354.

In Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489, the indictment contained ten substantive counts and one conspiracy count. The defendants contended that the substantive counts were merged in the conspiracy count and that only a single sentence could be imposed. In disposing of that contention adversely to defendants, the Supreme Court, at page 643 of 328 U.S., at page 1182 of 66 S.Ct., 90 L.Ed. 1489, said: "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established." In our case two separate offenses were charged. Each embraced one or more elements different from the others, that is to say, each of the offenses required proof of a different element. In the state of this record we think the Sealfon case is not controlling here.

Fourth. Subsection (c) of § 1201, the Federal Kidnaping Act, provides: "If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished as provided in subsection (a)." Subsection (a) provides that a violator of that subsection "shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

Appellants, relying mainly on Enfield v. United States, 8 Cir., 261 F. 141, say that the court in that case "held squarely that where there was special legislation which carried with it a section dealing with conspiracy to commit the crime described in such legislation, that any conspiracy action must be brought under such section of the statute and not under the General Conspiracy Act." In other words, insofar as prosecution under the Federal Kidnaping Act was concerned, § 371 of the Criminal Code was repealed by implication. And they make the point that because § 1201, the Kidnaping Act, contains a conspiracy provision, a conspiracy to commit the crime described in that section must be brought under that section and not under § 371.

We have examined the Enfield case. It does not support appellants' contention for the reason that that case did not involve an implied repeal of the general conspiracy statute. It related to an express repeal. Section 371 declares illegal an agreement to commit any offense against the United States, and provides, if a felony, that a violator thereof shall be fined not more than $10,000 or imprisoned not more than five years or both. Section 1201 contains no language tending in the slightest degree to indicate that prosecution under § 371 should be excluded, hence we conclude that § 1201 did not impliedly repeal § 371. Compare United States v. Coplon, D.C., 88 F.Supp. 912, 914. Section 1201 merely provided an increased penalty where the offense—object of the conspiracy—is the crime of kidnaping.

Furthermore appellants' contention lacks merit for another reason. In Williams v. United States, 168 U.S. 382, 389, 18 S.Ct. 92, 94, 42 L.Ed. 509, it was said: "It is wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made are embraced by some statute in force. * * * We must look to the indictment itself, and if it properly charges an offense

886

under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense charged was covered by a different statute." See also United States v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788, and Taylor v. United States, 7 Cir., 2 F.2d 444. At this point it is worthy of note to say that these appellants were sentenced to five years' imprisonment, well within the punishment provided for by § 1201(a) of the statute which provides for imprisonment for any term of years or for life, if the death penalty is not imposed.

We observe also that appellants make no claim that they were surprised or misled in any way by the character of the evidence, nor do they assert that the character of the offense with which they were charged was changed by the fact that the third count referred to § 371. The indictment set forth the facts which made up the charge. This was enough. United States v. Rosenblum, 7 Cir., 176 F.2d 321, 324, and Gaunt v. United States, 1 Cir., 184 F.2d 284, 289.

Fifth. Finally, appellants contend that one of the court's instructions was erroneous. Neither in the brief or upon oral argument was the question argued. Nor does the record disclose that they made any objection or suggestion to the court regarding the challenged instruction, and they did not tender any additional instruction. In this state of the record, a strict application of Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., would preclude a consideration of the present contention; we have, however, considered the point. The court, after instructing the jury as to the presumption of innocence, and that the Government must prove the defendants guilty beyond a reasonable doubt, told them that it was not necessary for the Government to show an actual agreement, but that it was necessary that the jury believe from all the evidence and circumstances that there was a conspiracy between the defendants. Under this state of the record, we see no cause for reversal.

Being convinced that no error has intervened justifying a reversal, the judgment of the District Court will be affirmed. It is so ordered.