**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Paul DE LUCIA, Defendant-Appellant**
**No. 12399.**

United States Court of Appeals
Seventh Circuit.

Dec. 31, 1958.

Rehearing Denied Feb. 4, 1959.

---

William Scott Stewart, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., William A. Barnett and John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

Defendant-appellant, hereinafter referred to as DeLucia, was found guilty by a jury on the first three counts of a four count indictment returned and filed on March 4, 1957. The fourth count charged DeLucia and one Joseph Bulger with conspiracy. The jury acquitted both defendants on Count IV.

Counts I and II charged DeLucia with violation of § 7201, Internal Revenue Code of 1954, 26 U.S.C.A. § 7201, in that he willfully attempted to evade payment of his income tax for the years 1948 and 1949 by making false statements concerning his income for those years. Count III charged a violation of § 145(b), Internal Revenue Code of 1939, 26 U.S.C.A. § 145(b), alleging that DeLucia filed a false return for the year 1950.

DeLucia was sentenced to serve three years and to pay a fine of $5,000 as to each count, the sentences to run consecutively. This appeal followed.

DeLucia attacks his conviction on Counts I and II upon the theory that there was a complete failure of proof that he made or caused to be made any false statements concerning his income for the years 1948 and 1949.

The first false statement, according to the Government, was made on September 1, 1954, when DeLucia with two attorneys, a Mr. Bernstein and Mr. Stewart, his present counsel, appeared before Mr. T. N. Smith, Group Supervisor, and Special Agents Stonesifer and Scholz of the Internal Revenue Department. A transcript was made of this meeting and is in the record.

We have carefully read that transcript. At no time did DeLucia make any statement, sworn or otherwise. Though there are several references to a $300,000 cache, which the Government claims is non-existent, such references can not be considered averments. Actually this meeting amounted to little more than verbal fencing between DeLucia's attorneys and the Internal Revenue Agents. It is highly improbable that a layman such as DeLucia would understand half of what transpired. We quote the following relevant portion from the transcript which illustrates the inefficacy of the conference:

"Mr. Smith: I don't want to be in the position where you gentlemen bring this witness in and you are going to sit here and testify for him.

"Mr. Stewart: He is not bound by what we say here. That goes both ways. Mr. D'Lucia is not bound by what you gentlemen say here either. We are not testifying for him. We are trying to straighten matters out and arrive at some understanding in this conference."

Thus there is a total failure to prove that DeLucia made or caused to be made any false statement on September 1, 1954 as alleged in Counts I and II of the indictment.

The second alleged false statement was supposedly made when Bulger, together with Bernstein, DeLucia's tax attorney, appeared before Revenue Agent King on November 19, 1954 and testified that he had counted $300,010 in the possession of DeLucia shortly prior to the prosecution years. DeLucia was not present when Bulger so testified. DeLucia contends that in the absence of competent evidence that he procured, knew of, or ratified Bulger's testimony it can not be attributed to him for the purpose of sustaining Counts I and II.

The Government in order to establish a connection between Bulger's testimony and DeLucia's intent to defraud

relies on two points. The first is that, at the Grand Jury hearing on DeLucia, Bulger testified that he had given the testimony before King at the request of De-Lucia. DeLucia was not present at this hearing. A transcript of this was read into evidence in the trial below. DeLucia's counsel objected to the admission of this evidence in that it was not competent as to DeLucia. With this we agree. This evidence was perfectly proper as to Bulger under Count IV but as to DeLucia under Counts I and II it was nothing more than hearsay.

Therefore, ignoring all that took place at the Grand Jury hearing we turn to the Government's second point. Here it is argued that inasmuch as Bernstein had Power of Attorney to do all things in relation to DeLucia's tax matters that De-Lucia could himself do when Bernstein brought Bulger before Agent King it had the same legal import as if DeLucia himself had done so. This argument fails in several respects. There is no showing that Bernstein was aware that Bulger would tell a false story, as we assume he did. Hence Bernstein was not culpable in any manner and there is nothing of an illegal nature that we may import to DeLucia.

Secondly while it is probable DeLucia would have known Bulger's story to be false there is absolutely no competent evidence showing that DeLucia knew Bulger was to testify or had testified before Agent King. While it is true that Bernstein had been DeLucia's tax attorney for a number of years this does not prove that DeLucia was informed of all that Bernstein did in relation to the former's tax matters. As to whether DeLucia told Bulger what to say and whether he intended that the story should be related to Agent King or at any other time is, from the competent evidence in the record, mere speculation.

The Government cites several cases to sustain its argument that the action of an attorney may be chargeable to the client. However, in the first case cited, Banks v. United States, 8 Cir., 1953, 204 F.2d 666, the attorney there did nothing more than relay to the Government agents written answers furnished by his client to specific questions tendered by the agents.

In the second case, United States v. Bender, 7 Cir., 1955, 218 F.2d 869, this court merely held that where an attorney submitted an auditor's work sheet to explain discrepancies in his client's tax return, the Government had not obtained the work sheet improperly and it could be admitted in evidence.

In Gariepy v. United States, 6 Cir., 1955, 220 F.2d 252, the defendant at the trial identified the income tax return, supposedly submitted by others, as his own. In addition the court charged the jury that it could not find the defendant guilty unless it found beyond a reasonable doubt that he had knowledge of the falsity of the returns filed.

The defendant in the case of United States v. Albanese, 2 Cir., 1955, 224 F.2d 879, had admitted that the returns submitted were his and that he had given permission to others to sign them for him.

Therefore, in three out of the four cases there was substantial proof, through admissions, or otherwise, that defendant was aware of the relevant act committed by others in his name. In the Bender case, while it was not directly shown that the defendant knew his attorney was submitting the auditor's work sheet, the submission thereof did not constitute the gravamen of the offense complained of, as it does here.

■ This Court is not now holding that circumstantial evidence could not supply the connection between Bulger's testimony and DeLucia's intent. Such undoubtedly could be done, Canton v. United States, 8 Cir., 1955, 226 F.2d 313. What we do say is that where, as here, an attorney acting in good faith offers a witness who gives false testimony before Internal Revenue agents and there is no showing, circumstantial or otherwise, that the client knew that such testimony was given, the attorney's act can not be imputed to the client to constitute willful fraud.

We, therefore, hold that there was a total failure to prove a necessary element of the offense charged in both Count I and Count II; that the evidence is clearly insufficient to support the verdict of guilty as to those two counts; and the District Court erred in denying DeLucia's motion for judgment of acquittal on Counts I and II.

DeLucia next contends that the offense charged in Count III was barred by the six year statute of limitations. The indictment was returned and filed on March 4, 1957 charging in Count III that De-Lucia had filed a false and fraudulent return on or about March 5, 1951. Government's Exhibit No. 22 is a photostatic copy of DeLucia's 1950 return. There is on the face of the return a stamp bearing the legend: "Received Mar. 5, 1951 Coll. Int. Rev. 1st. Dist. Ill. No. 8."

Moreover, when counsel for the Government offered Government's Exhibit No. 22 in evidence pursuant to agreement and stipulation of the parties it was stated to the jury and for the record that it was "filed with the Collector of Internal Revenue in the First District of Illinois on March 5, 1951." DeLucia first raised the question as to whether the date on the stamp was correct on his motion for a new trial. He offered no evidence to prove the date was not affixed when the return was received by the Internal Revenue Department. His objection now is not well taken.

DeLucia also objects to the refusal of the trial court to direct the submission to him of certain memoranda in the possession of the Government. The Court reviewed the memoranda *in camera* and correctly decided only one had any relation to the testimony of Agent Smith, the author of the memoranda. This one was turned over to the defendants. It is now contended that such refusal was in violation of the mandate laid down in Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

The District Court was, however, following the provisions of 18 U.S. C.A. § 3500 and as was said in United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338, 340:

"However, the defendant argues that the mandate in the Jencks case is a constitutional edict and that § 3500, if it narrows the holding of the Jencks decision in any regard, is unconstitutional. We cannot agree. As we read the Jencks case, its rule is an exercise by the Supreme Court of its supervisory power over the 'administration of criminal justice in the federal courts'. [353 U.S. 657, 77 S.Ct. 1013]. See McNabb v. United States, 318 U.S. 332, 340–342, 63 S.Ct. 608, 87 L.Ed. 819. We find no indication in Jencks that the standards it set forth were constitutionally required. It follows that once Congress has entered the field its determination of proper federal criminal procedure is controlling. We conclude that § 3500 in that it fails to apply the Jencks procedure * * * is not unconstitutional."

We agree with the Second Circuit and hold that DeLucia's contention that 18 U.S.C.A. § 3500 is unconstitutional is without merit.

As DeLucia's complaint concerning instructions relates solely to Counts I and II of the indictment what we have heretofore held dispenses with necessity for any comment thereon.

DeLucia also contends that where he himself kept a set of books and records the District Court erred in permitting use of the net worth method of proof. This would mean that simply because taxpayer has kept a set of books, the veracity of which is in question, the Government is estopped from going beyond those books to prove their falsity or inaccuracy. This is absurd. Holland v. United States, 1954, 348 U.S. 121, 131–132, 75 S.Ct. 127, 99 L.Ed. 150.

DeLucia's main thrust is delivered at the Government's evidence sustaining the net worth method of proof. He claims that the Government not only changed its position from time to time but in failing to prove his net worth at any particular

date it left it to the jury to speculate and guess as to his guilt. With this we can not agree.

The Government undertook to prove what assets defendant had on hand at the beginning of 1948 by means of showing his entire preceding financial history. Much of this evidence was admitted by stipulation. The first step was to show what income DeLucia had received from all sources from 1920 to December 31, 1947. The Government then proceeded to introduce evidence of all known expenditures during this same period.

The Government also checked the income tax filing record of DeLucia's wife, Nancy, under both her maiden and married names for all prior years. A check was made of Internal Revenue Gift and Estate tax records, probate records, bank accounts, brokerage houses and insurance company records. As a result of this investigation, the Government contended that DeLucia could not have had more than $48,697.01 at the beginning of 1948.

The cash on hand at that date was the central issue in the case, the defense position being that there was at least $300,-000 on hand and the Government's position that there was no more than $48,-697.01. The jury resolved the issue against DeLucia and we can not say that in doing so the verdict is not adequately supported by the evidence. In Holland v. United States, 1954, 348 U.S. 121, 133–134, 75 S.Ct. 127, 134, 99 L.Ed. 150, the Court said:

> "The Government also negatived the possibility of petitioners' accumulating such a sum by checking Mr. Holland's income tax returns as far back as 1913, showing that the income declared in previous years was insufficient to enable defendants to save any appreciable amount of money. The jury resolved this question of the existence of a cache of cash against the Hollands, and we believe the verdict was fully supported."

With this as a starting point the Government went on to show that DeLucia had made large expenditures that far exceeded any reported income.

It was stipulated at trial that during the years 1948, 1949 and 1950 and until March 1954 DeLucia was on parole as a result of a previous conviction. Parole reports filed by him during the prosecution years were admitted into evidence by stipulation. These reports show personal and farm expenditures in the amounts of $217,107.37 for 1948; $120,-933.14 for 1949 and $118,770.76 for 1950. These amounts are in substantial agreement with the expenditures shown on DeLucia's books also in evidence. The defendant's income tax returns for the same years showed no net income and, in fact, reported losses as follows: 1948, $ - 18,944.71; 1949, $ - 2,282.95; 1950, $ - 9,838.82.

In addition to the proof of expenditures exceeding the reported income the Government also shows a possible likely source of this unreported income.

During the period 1944 to March 1954 DeLucia was either imprisoned or on parole and his returns for that period disclosed no income that can not be readily accounted for upon the face of the returns. However, his return for the year 1954, which was the first year he was free of parole, reported $76,512 from "Personal wagering at tracks, etc." His 1955 return reported $86,050.92 from the same source and his 1956 return reported $78,460 from "miscellaneous". We think the jury could very easily have believed that DeLucia simply did not report his income from such illicit activities during the period that he was on parole, but did continue to receive such income out of which he made the large expenditures during the years in question. In United States v. Frank, 3 Cir., 1957, 245 F.2d 284, 287, the Court said:

> "It was also shown that the defendant on several of his income tax returns had reported a gain from 'sporting enterprises,' an euphemistic term for gambling profits. He did not return any for 1948 and it is suggested that this form of activity was another possible source of income. This point was quite thoroughly developed and the defendant's

method of bookkeeping, or lack of bookkeeping, for his sporting enterprises was shown. This was all relevant and its weight for the jury."

■ We hold that the above evidence, in so far as it relates to Count III, was sufficient for the jury to find that DeLucia had failed to report income during the taxable year 1950.

■ DeLucia originally asserted in his briefs herein that there was inconsistency between the verdicts of guilty and of not guilty and quoted from the dissenting opinion in Dunn v. United States, 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356. However the majority opinion in that case said 284 U.S. on page 393, 52 S.Ct. on page 190:

"Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. Latham v. The Queen, 5 Best & Smith 635, 642, 643. Selvester v. United States, 170 U.S. 262, 18 S.Ct. 580, 42 L.Ed. 1029."

This Court said in United States v. Bazzell, 7 Cir., 1951, 187 F.2d 878, 884:

"As to the argument that the verdict is inconsistent, it will be enough to say that where a defendant is charged by two or more counts in an indictment, consistency between the verdicts on the several counts is not necessary. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356; United States v. Denny, 7 Cir., 165 F.2d 668; and United States v. Coplon, 2 Cir., 185 F.2d 629, 633, 28 A.L.R.2d 1041. A verdict of acquittal on one count does not invalidate a verdict of guilty on another count, although the same evidence is offered in support of each. Garrison v. Hunter, 10 Cir., 149 F.2d 844, 845. See also United States v. Pandolfi, 2 Cir., 110 F.2d 736."

Moreover, counsel for DeLucia conceded in oral argument in this Court, and correctly so, that there is no inconsistency between the verdicts of not guilty on Count IV and of guilty on Count III. As we are now concerned only with Count III what has been said is completely dispositive of any vestige of inconsistency.

DeLucia also contends that the Government switched its positions in regard to the alleged hoard of money that he had. However, with this we cannot agree inasmuch as it appears from the record that the Government has always contended that DeLucia did receive a large sum through extortion and that it has been taken into account in the itemization of DeLucia's income. If anybody is changing positions it is the defendant who has at times denied that he received the money and on other occasions claims by innuendo that this constituted the sum from which he made the various expenditures in the years in question.

Defendant's last objection goes to the supplemental instruction given to the jury on the second day of deliberation. Counsel for both the Government and defendant presented instructions to the Court based on the holding of the United States Supreme Court in Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. Defense counsel made certain objections to the version of the Allen charge submitted by the Government and the Court acceded to some of these objections and refused others. The supplemental instruction as thereafter given by the Court has been approved by this Court almost *in haec verba*. United States v. Furlong, 7 Cir., 1952, 194 F.2d 1.

We, therefore, hold that the Court did not err in giving the supplemental instruction.

The portion of the judgment based upon Counts I and II is reversed and cause remanded with instructions to grant the motion of the defendant for judgment of acquittal thereon.

The portion of the judgment based upon Count III is affirmed.