UNITED STATES of America,
Plaintiff-Appellee,

v.

William Joseph RUSSO, Defendant-
Appellant.

No. 14488.

United States Court of Appeals
Seventh Circuit.

Aug. 6, 1964.

Rehearing Denied Sept. 11, 1964,
en banc.

Schnackenberg, Circuit Judge, dis-
sented.

Julius Lucius Echeles, Robert J. Mc-
Donnell, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty.,
Thomas J. Regan, Asst. U. S. Atty., Chi-
cago, Ill., for appellee, John Peter Lu-
linski, John Powers Crowley, Asst. U. S.
Attys., of counsel.

Before SCHNACKENBERG, KNOCH
and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Defendant-appellant, William Joseph Russo, was indicted in two counts for violation of Title 26 U.S.C. § 7203. Count I charged that he was engaged in the business of accepting wagers and had received such wagers, but had knowingly failed to pay the special occupational tax on wagering for the taxable period ending June 30, 1964. Count II charged that defendant was engaged in the business of receiving wagers and had received such wagers but had knowingly failed to register and file a return with the District Director of Internal Revenue.

After trial, the jury found defendant guilty only of Count II. He was sentenced to serve six months and to pay a fine of $1,000. This appeal followed.

Defendant states the contested issues as follows:

1. Whether there is sufficient evidence in the record to support a guilty finding under Count II.

(a) There was no proof that the defendant was aware of the federal tax and that he "wilfully" refused to pay it.

(b) There is no proof that defendant failed to file a tax at the time when the law required him so to do.

3. Whether the jury's verdict in finding the defendant not guilty under Count I which charged the defendant "was engaged in the business of accepting wagers" and that he "did receive wagers on his own behalf" negated and vitiated the verdict of guilty under Count II wherein the defendant was charged with being in the business of accepting wagers and that by reason therefore he was required to register with the District of Internal Revenue and to file a return, Form 11C.

4. Whether it was a violation of the defendant's right to a fair trial to permit the prosecutor to produce evidence that the defendant refused to answer certain questions of the interrogating agent when the defendant was arrested.

■ The government asserts that defendant may not now raise the issue that the evidence was insufficient to sustain the verdict because there was no motion for acquittal at the close of all the evidence. United States v. Jones, 7 Cir., 1953, 204 F.2d 745, 748, cert. den. 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368. Nevertheless, the government argues that viewed, as it must be, in the light most favorable to the government, the evidence does support the conviction on Count II.

Stanley Wheeler, an Internal Revenue Agent, testified that he observed defendant, on four different days at the race track engaging in conversations with various individuals who passed currency to defendant, who then entered notations on a piece of paper.

Agent Wheeler testified further that he himself approached defendant on each of the four days prior to certain races, gave defendant money, which defendant accepted, stated that he "wanted" certain horses, variously referring to them by name or number and indicating the allocation of the money, e. g. he said "I want No. 9, Major Byrd, 3 and 3" passing over $6.00. The defendant on each occasion repeated the gist of Agent Wheeler's statement and made notations on a card or piece of paper.

Some of Agent Wheeler's evidence was corroborated by another Internal Revenue agent, Howard Pollitz, who observed defendant and Agent Wheeler on August 24, 1963, after which Agent Pollitz arrested defendant.

Defendant stresses the fact that when arrested he was asked if he had a wagering stamp and he answered "I don't know what you are talking about." He contends this showed his ignorance of the law. Later in the course of discussing instructions concerning possible contradictions in defendant's testimony, defense counsel asserted that there had been no showing that defendant had made statements inconsistent with his

present testimony. The Trial Court said:

"As I recall it, the testimony of the Agent was that he didn't know anything about the law, isn't that right, the wagering tax stamp?"

Defendant argues that the government failed to prove that he knew of any obligation to pay the tax; that not knowing of its existence, he could not be guilty of wilfully refusing to comply with the law.

However, there was ample evidence that defendant was engaged in accepting wagers. Defendant testified that he was an expert on trotting races, attending almost nightly for two or three years; that he associated with bettors. He described himself as a "horse player" and a "tout" with a regular clientele of customers whom he advised and for whom he made bets at the race track. He said he knew what a "bookmaker" was and that he was not one, but instead was a tout; that he did not take bets for his or anyone else's profit.

The Trial Court's interpretation of the statement "I don't know what you are talking about" was not binding on the jury who may, with equal justification, have decided that defendant was denying, as he more clearly denied later, that he was a bookmaker or that he accepted wagers.

The jury might quite reasonably infer from the evidence here that defendant "had been in the business for so long and associated so frequently with known gamblers that he should have known of the requirement," unlike John McGonigal in United States v. McGonigal, D., Del., 1963, 214 F.Supp. 621, 622, on which defendant relies.

Marion Hope Hamilton, Assistant Chief of Records in the Chicago Office of the Internal Revenue Service, supervising maintenance of files and federal tax returns, testified that the "Special Tax Return and Application for Registering" (form 11C) was kept under her control and supervision.

Defendant was arrested August 24, 1963, on the basis of activities observed on that day and on the few days preceding. The indictment was returned by the August, 1963, Grand Jury, and trial began October 31, 1963.

Miss Hamilton testified, on October 31, 1963, that, at the request of the United States Attorney's office, she conducted a search of the files for returns of form 11C under the names of William Joseph Russo or William J. Russo, for the tax year ending June 30, 1964, on October 28 and October 29, and was unable to find one. Because she did not state the year in which she made her search, defendant contends that we may not assume that she made it in 1963, because, for all we know to the contrary, she may have made it in 1962. Defendant argues that there was no proof he failed to file a tax form within the period prescribed by law.

The jury was instructed that the return must be filed to cover the period beginning with the first day of the calendar month in which one engages or expects to engage in a business making him liable for the tax and ending with the following June 30th. Viewing Miss Hamilton's testimony in context, we conclude that the government sustained its burden on this point.

Defendant also contends that the jury could not have found him guilty under Count II, having already found him not guilty under Count I. Consistency in verdicts on the several counts of an indictment is not essential. Each count is viewed as a separate indictment. Dunn v. United States, 1932, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356, and cases there cited. A verdict of acquittal on one count does not invalidate a verdict of guilty on another count, even where the same evidence is offered in support of each count. United States v. Bazzell, 7 Cir., 1951, 187 F.2d 878, 884, cert. den. 342 U.S. 849, 72 S.Ct. 73, 96 L.Ed. 641, and cases there cited.

Defendant's failure to renew at the close of his own evidence, the motion for judgment of acquittal he made at the close of the government's evidence, operated as a waiver of the earlier motion.

The sufficiency of the evidence to take the case to the jury is not open for review. Clark v. United States, 5 Cir., 1961, 293 F.2d 445, 448; United States v. George, 6 Cir., 1963, 319 F.2d 77, 79. In any event, we must conclude from our view of the record that the evidence here did support the conviction on Count II.

When Agent Pollitz testified that after arresting defendant he advised defendant of his constitutional privilege to remain silent, the prosecutor asked, "What next, if anything, did you do?" Agent Pollitz answered, "I then asked him questions which he refused to answer." The defense objection that this was "highly improper" was overruled. Defendant argues that the prosecutor must have known what the answer would be and improperly elicited it.

The prosecutor had been presenting a chronological account of Agent Pollitz's actions by repeatedly asking what, if anything, had been done next. In most instances Agent Pollitz answered with a description of his own actions, e. g. "We escorted him out of the park," and "We escorted him out of the park and took him in Special Agent Lorenz' automobile."

In several instances where Agent Pollitz had asked questions of defendant, defendant, as indicated above, had answered, and Agent Pollitz testified as to those answers. Defendant had also freely given his name, address and age. Continuing along the same line, the prosecutor received the response that the defendant had refused to answer other questions.

Later, in covering the events at the Assistant U. S. Attorney's office, Agent Pollitz testified that he asked defendant if he accepted wagers and defendant replied "I don't know what you are talking about." The prosecutor asked whether there had been any other conversation at that time and Agent Pollitz answered, "I asked him other questions but he refused to answer." The prosecutor then asked what else, if anything, Agent Pollitz had done and Agent Pollitz went on to de-

scribe his search of defendant's person and the various government exhibits thereby obtained, including several slips of paper bearing notations, and $638.50 in currency, one $10 bill being marked with an "S". Agent Wheeler had testified that he gave defendant a $10 bill marked with an "S".

In defendant's view, this testimony of his refusal to answer questions denied him a fair trial and violated the spirit of the Fifth Amendment to the Constitution. There was no undue emphasis of this point, however. Apart from the fact that defendant did testify at his trial and hence there could be no comment on his failure to do so, we think in all the circumstances of this examination, admission of this testimony did not constitute error.

We have considered all other arguments advanced on behalf of the defendant, but we remain satisfied that the judgment of the District Court should be affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge (dissenting).

The record in this case compels me, although reluctantly, to dissent.

The jury found the defendant not guilty under count I, which charged him with willfully and knowingly failing to pay the tax on wagers, in violation of 26 U.S.C.A. § 7203. However, the jury found defendant guilty, under count II, of willfully and knowingly failing to register and file a return, in violation of the same section.

I find no evidence in the record of willfulness in defendant's failure to register and file a return. While it was his duty to do so and we can, momentarily, indulge in the aphorism that everyone is presumed to know the law, yet the act, in its definition of the offense says, "*willfully* fails to * * * make such return". (Italics supplied.)

Here there is a total absence of evidence of willfulness. Pollitz, an internal revenue agent who testified for the gov-

ernment, said that, when he arrested defendant, "He [defendant] was asked if he had a wagering tax stamp." and defendant "replied he doesn't know. 'I don't know what you are talking about.'"

A significant thing about this record is that there is no evidence that defendant *did know* what the agent was talking about. Certainly this case lacks any proof showing that defendant knew there was a federal law requiring him to make a return. This becomes abundantly clear when we compare the facts in this case with those in our recent decisions in United States v. Durant, 7 Cir., 324 F.2d 859 (1963), and United States v. Keig, 7 Cir., 334 F.2d 823 (1964). In each of these cases the defendant unsuccessfully contended that his violation of the revenue laws had not been willful. In both Durant and Keig, however, the evidence clearly showed facts which we held supported the charge of willfulness. In Durant, for instance, we pointed out, at 862 of 324 F.2d, that prior to the years involved in the indictment, a revenue agent discussed with defendant the practice of taking corporate tax deductions for personal expenditures and said this practice was improper; also, defendant himself testified that another agent had discussed with him about personal items that the corporation had paid for and that he had read and signed a protest against the latter agent's ruling, prepared by his lawyers. At 863, we said:

> "As an abstract proposition, we would agree that no amount of laxity in and of itself constitutes willfulness. However, in the case at bar, we believe that the district court properly recognized the additional factors revealed by the records, tending to prove a willful intent: (a) defendant knew the corporation was paying his expenses, (b) the payments were not considered loans by

the parties, (c) defendant knew the corporate payments were income to him; and therefore properly found that defendant willfully failed to include them in his returns.

\* \* \* \* \* \*

> "Whether defendant willfully attempted to defeat and evade taxes in this case presented a question for the trier of the facts. There was substantial evidence before the court to support the result which it reached. \* \* \*"

In Keig, defendant was charged with willful failure to make income tax returns in violation of 26 U.S.C.A. § 7203.

In this court government counsel has furnished us with the recent *en banc* opinion of the Fifth Circuit in Edwards v. United States, 334 F.2d 360. There two defendants were convicted of violating 26 U.S.C.A. § 7203 by willfully failing to register for and pay a gambling tax. The majority opinion, from which three judges dissented, points out that

> " \* \* \* since the evidence conclusively establishes that the defendants failed *both* to register for and to pay the tax, the test of willfulness is met. \* \* \*"[1]

and stated:

> "In the instant case there is no direct proof that the defendants knew of the duties imposed by the federal gambling tax statute—they neither admitted nor denied such knowledge, \* \* \*."[2]

In Edwards there was affirmative evidence that defendant Frank Edwards was arrested for a bolita offense in 1949, when he rented a house from someone else, used it to carry out his gambling operation, accepting packages at night, hiding a can containing lottery paraphernalia, carrying under his shirt paper sacks left for him in the mail box. The

1. In the case at bar the jury by its verdict found defendant not guilty on the count I charge that defendant failed to pay the tax.

2. In the case at bar there is implicit denial of knowledge of the gambling tax

statute in the only evidence bearing on this subject, which is that at the time of his arrest, defendant stated that "he doesn't know. 'I don't know what you are talking about' ".

court commented, "This long experience in the lottery business and concealment of operations is enough under the Ingram case to allow the jury to infer that Frank Edwards was aware of the wagering tax."

In the case at bar there is no evidence of stealth or any earmarks of violation of the law which might be indicative, if present, of the knowledge by defendant that he was engaged in violation of a federal law.