Raymond A. **HAWKINS** and Brunilda **Hawkins, Debtors.**

**Bankruptcy No. 97–15883.**

United States Bankruptcy Court, E.D. Louisiana.

Sept. 8, 1998.

---

**23.** 7 C.F.R. § 46.46(e)(2).

**24.** 861 F.2d 416 (4th Cir.1988).

**25.** *Id.* at 417–420.

**26.** *Id.* at 419.

William A. Neilson, New Orleans, LA, R. Travis Douglas, Fort Smith, AR, for Debtor.

Stevens E. Moore, Asst. U.S. Attorney, New Orleans, LA, Claude C. Lightfoot, Jr., Metairie, LA, Chapter 7 Trustee.

### REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

Before the court is: (1) the amended motion of the Internal Revenue Service (IRS) for retroactive relief from the automatic stay (Pl. 31); and (2) the motion of Claude C. Lightfoot, Jr., Chapter 7 trustee, for contempt and for turnover of estate property. (Pl. 38). The issues to be determined are: (1) whether the trustee has standing to at-

1. Pl. 43, Ex. C.

tack the effectiveness of an IRS levy against a third party who owed money to the debtors; (2) if so, whether the levy was effective; and (3) whether the IRS is entitled to adequate protection on any amounts seized. The court finds that the trustee has standing to attack the effectiveness of the levy, the levy was not effective, and the IRS is not entitled to adequate protection before turning over the funds seized.

### I. Factual Background

The essential facts in this case are undisputed.

1. Raymond A. Hawkins and his wife, Brunilda A. Hawkins were self-employed carnival concessionaires, who resided in Kenner, Parish of Jefferson, Louisiana.

2. On April 18, 1997, the Hawkins each entered into a concession contract with the State Fair of Texas ("State Fair") to operate amusement games from September 26, 1997 through October 19, 1997.

3. The commencement date under the terms of the contracts with the State Fair did not begin before September 26, 1997. As a result, nothing was due to the Hawkins under either contract until at least September 26, 1997, or sometime thereafter, when they performed various services and earned revenues under the contracts.

4. On September 17, 1997, Revenue Officer Deborah Montreuil issued a Notice of Levy (the "levy") to the State Fair. The levy states:

This levy requires you to turn over to us this person's property and rights to property (such as money, credits and bank deposits) that you have or which you are already obligated to pay this person.[1]

5. The levy was received by the State Fair on September 22, 1997, prior to the actual commencement date of the contracts the Hawkins had with the State Fair.

6. Revenue Officer Montreuil negotiated an informal agreement with the State Fair regarding what it would turn over to the IRS upon termination of the contracts. She confirmed her conversation by sending a state-

**336**

ment of their agreement via a fax cover sheet on September 23, 1997.[2] The agreement was negotiated before the Hawkins performed any services under their contracts.

7. The debtors filed a petition under Chapter 7 of the Bankruptcy Code on October 17, 1997.

8. On October 21, 1997, R. Travis Douglas, counsel for the debtors, called Revenue Officer Montreuil and notified her of the debtors' bankruptcy petition.

9. Also on October 21, 1997, Russell B. Smith, attorney for the State Fair, sent Revenue Officer Montreuil a copy of Smith's October 21, 1997 letter to Mr. Douglas wherein Smith advised that the State Fair would hold the funds owed to the Hawkins until Smith received an order from the Bankruptcy Court telling him what to do with the funds.[3]

10. On or about October 22, 1997, the State Fair inadvertently mailed a check in the amount of $19,952.07 to the IRS in response to the September 17, 1997 levy.[4] This check represented the net proceeds due the debtors under their contracts with the State Fair.

11. The IRS received the check on or about October 30, 1997. Revenue Officer Montreuil was not in the office, and a different revenue officer applied the funds to the tax liability for the debtors' 1985 tax year, a year in which no lien was validly filed in the U.C.C. books of Jefferson Parish.

12. On October 31, 1997, Revenue Officer Montreuil received telephone calls from Mr. Smith and an employee of State Fair stating that the $19,952.07 check was sent in error and should be returned. The IRS did not return the funds.

13. On November 3, 1997, Brenda Esser of the IRS's Special Procedures Staff reapplied the proceeds to the tax liability for the debtors' 1991 tax year. The 1991 tax year was the only year for which the IRS had a

lien filed in the U.C.C. books for the Parish of Jefferson.

14. At the Section 341 meeting, the trustee stated his intent to disclaim all assets listed on the debtors' Schedule B, except the amount due the debtors from the State Fair.

15. On January 15, 1998, the State of Louisiana filed a proof of claim in this case asserting a claim for income taxes in the total amount of $16,549.90. This claim includes a secured claim of $14,974.97 by virtue of a notice of state tax lien filed in Jefferson Parish on March 12, 1996.[5]

16. On March 27, 1998, the IRS filed a proof of claim in the total amount of $269,629.44, representing a secured claim of $57,900 for income taxes due for 1985 and 1991, an unsecured priority claim of $5,062.05 for income taxes due for 1995, and an unsecured general claim of $206,667.39 for income taxes, interest, and penalties due for 1985, 1986, 1987, 1988, 1989, 1990, and 1991.

17. No other proofs of claim have been filed.

## II. Analysis

### A. Standing of the Trustee

The IRS argues that the trustee may not attack the effectiveness of the levy. It claims that an attack on a levy is a wrongful levy action under 26 U.S.C. § 7426(a)(1), and that "[i]t is well settled that persons against whom is assessed the tax out of which a levy has arisen may not maintain an action under 26 U.S.C. § 7426(a)(1)".[6]

Section 7426 of Title 26, United States Code, provides:

(a)(1) If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought with-

---

**2.** Pl. 31, Ex. E.

**3.** Pl. 43, Ex. E.

**4.** Pl. 31, Ex. G.

**5.** Claim No. 1.

**6.** Pl. 49 at 2.

out regard to whether such property has been surrendered to or sold by the Secretary.[7]

The IRS's argument is partially correct. There is a plethora of cases holding that the taxpayer has no cause of action under Section 7426, and that the section affords the exclusive remedy for an innocent third party whose property is confiscated by the IRS to satisfy another person's tax liability.[8] Section 7426 applies in situations where the IRS levies a third person for taxes owed by a taxpayer, and the third person contends that the property levied upon is not owned by the taxpayer.[9]

Unfortunately for the IRS, that is not the situation before the court. Merely because a taxpayer has no claim under Section 7426 does not mean that a taxpayer has no other remedies.

As stated by the court in *Hanna Coal Co., Inc. v. I.R.S.*,

> There is no question that the Internal Revenue Code provides a cause of action to a person wronged by an IRS levy. *See* 26 U.S.C. § 7426(a)(1). It is equally clear, however, that this remedy is not exclusive. Section 7426(a)(1) mentions neither exclusivity nor bankruptcy, suggesting that, if the provision was intended to displace the cause of action for violation of an automatic stay, it was very poorly drafted. Furthermore, it is now well-established law that the IRS can be sued for violation of an automatic stay for wrongfully levying on property or threatening to do so. *See, e.g., In re Price*, 42 F.3d 1068, 1074 (7th Cir. 1994) (upholding judgment against the IRS for violation of automatic stay for sending notice of intent to levy); *In re Washington*, 184 B.R. 172, 174–75 (S.D.Ga.1995) (same); *Davis v. I.R.S.*, 136 B.R. 414, 419–

23 (E.D.Va.1992) (same, for levy and threat of levy).[10]

The District Court in *Hanna Coal Co.* went on to discuss the Seventh Circuit case of *In re Price*,[11] which held that the Bankruptcy Code, not the Internal Revenue Code, governs the award of fees for the IRS's violation of the automatic stay. The District Court pointed out that in the past, the IRS enjoyed a privileged status in levying upon the assets of a debtor in bankruptcy, which was changed in the October 5, 1994 amendment to the Bankruptcy Code that abrogated sovereign immunity as to several Code sections, including the automatic stay provisions. As eloquently stated by the District Court, "[t]he IRS cannot restore its former status by invoking sections of the Internal Revenue Code not intended to address the special legal status of bankruptcy."[12]

■ Section 7426 of the Internal Revenue Code does not bar a trustee in bankruptcy from claiming a violation of the automatic stay. In this case, the IRS knows that it violated the automatic stay because it filed a motion for retroactive relief from the automatic stay. The IRS may not hide behind Section 7426 to prevent a trustee from obtaining the protections afforded the property of the debtor's estate by the Bankruptcy Code. The trustee has standing to attack the effectiveness of the levy.

### B. *Effectiveness of the levy*

■ The trustee argues that the levy was not effective because the State Fair had no property of the debtors on September 17, 1997, the date the levy was served, and the levy was not a continuing levy.

During oral argument, the attorney for the IRS basically conceded this point, admitting that "there are valid disputes as to the effec-

---

7. 26 U.S.C. § 7426(a)(1).

8. *See e.g. McCarty v. U.S.*, 929 F.2d 1085 (5th Cir.1991); *Texas Commerce Bank–Fort Worth, N.A. v. U.S.*, 896 F.2d 152, 156 (5th Cir.1990); *United Sand and Gravel Contractors, Inc. v. U.S.*, 624 F.2d 733, 739–40 (5th Cir.1980); *Shannon v. U.S.*, 521 F.2d 56 (9th Cir.1975).

9. *See Texas Commerce Bank–Fort Worth, N.A. v. U.S.*, 896 F.2d at 156 ("A levy is 'wrongful' if it

seizes property that does not belong, in whole or in part, to the taxpayer"); *Century Hotels v. U.S.*, 952 F.2d 107, 109 (5th Cir.1992) (following *Texas Commerce* ).

10. 198 B.R. 672, 673 (W.D.Va.1996).

11. 42 F.3d 1068, 1074 (7th Cir.1994).

12. *Hanna Coal Co.*, 198 B.R. at 673.

tiveness of the levy between the party levied upon and the IRS."

Because this admission is somewhat opaque, and is not a definite admission that the levy was ineffective, the court will analyze the effectiveness of the levy.

Under Section 6331(a) of the Internal Revenue Code, the IRS is authorized to levy upon all property and rights to property (except property exempt by statute) belonging to a delinquent taxpayer.[13] Section 6331(b) provides that a levy extends only to property possessed and obligations existing at the time of the levy, unless the levy is a continuing levy on salary and wages.[14]

The Treasury Regulations further state that except for levies on salaries and wages,

a levy extends only to property possessed and obligations which exist at the time of the levy. Obligations exist when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date.[15]

Courts have held that an obligation is not fixed and determinable when a taxpayer merely has a contingent right to future income. For example, in *In re Hawn*,[16] the bankruptcy court held that a bank was not required to honor an IRS notice of levy by surrendering funds that, at the time the levy was served, represented the debtor's right to receive revenues from future production of oil and gas from the debtor's property. The court determined that the income stream due on the debtor's claim for oil royalties represented only a contingent right to future income. The future oil royalties were contingent upon (1) whether minerals were produced, (2) the amount of production, (3) whether and when the minerals were sold, (4) the sales price, and (5) the expenses incurred.[17]

Similarly, in *U.S. v. Morey*,[18] a lawyer was in litigation over a fee due to him by a client. Before the litigation was concluded, the IRS levied the client for the attorney's delinquent taxes. Sometime after the IRS levy was served on the client, the litigation was resolved, and the client paid funds to the estate of the by then deceased lawyer. The IRS then filed suit against the client for failure to honor the levy. The court held that the levy was not effective against the future payments made by the client to the attorney because at the time of the levy, the lawyer had only an intangible, contingent interest in the funds.

The levy in the present case was not a continuing levy. When the levy was served on September 17, 1997, no services had been performed under the contracts with the State Fair. Under the contracts there was no assurance that any services would be performed even after September 26.[19] Thus, nothing was due under the contracts for the IRS to seize and there was no assurance that anything would come due.

In sum, the levy did not attach to any property of the debtors.

## C. *Adequate protection*

■ The IRS argues it is entitled to adequate protection of its interest in the contested funds before it should be required to turn over the funds to the trustee.

There are several problems with the IRS's argument. First, the posture of the IRS is weak because it has violated the automatic stay. The IRS did not file a motion for adequate protection, but is instead attempting to obtain adequate protection as part of its motion for retroactive relief from the automatic stay.

Second, the cases cited by the IRS are inapposite to the present situation. The IRS

---

13. 26 U.S.C. § 6331(a).

14. 26 U.S.C. § 6331(b).

15. 26 C.F.R. § 301.6331–1(a).

16. 149 B.R. 450 (Bankr.S.D.Tex.1993).

17. 149 B.R. at 457.

18. 821 F.Supp. 1438 (W.D.Okla.1993).

19. *See* Pl. 43, Ex. A and B—Fair License Agreements at ¶ 9 (reserving the right of the State Fair "to terminate or cancel this Agreement whenever, in the sole and absolute discretion of the Vice President, such termination or cancellation shall be necessary for the best interest and general welfare of the general public or of Lessor.")

cites 15 cases and *Collier on Bankruptcy* for the proposition that although "issuance of a notice of levy does not strip the estate of any interest in the funds, the fact remains that the United States need not turn over the funds where 'adequate protection' is not provided."[20] The 15 cases appear to be the same 13 cases cited by the IRS in *In re Quality Health Care*,[21] with the addition of *United States v. Whiting Pools*[22] and the *In re Quality Health Care* case itself. Each of the cases involves a situation where a creditor was in proper possession of a debtor's property through a valid lien, levy or other type of seizure, and therefore, could demand adequate protection before returning the property to the estate. The cases did not involve an issue of a creditor being in possession of property through an ineffective levy that did not put the creditor in lawful possession of any of the debtor's property.[23] In the present case, the IRS was not properly in possession of the debtors' property because there was no valid prepetition levy. The IRS obtained the funds, postpetition, as the result of an informal agreement with the State Fair and the mistake of the State Fair in sending the funds to the IRS after notice of the automatic stay.

Third, when the IRS received the funds from the State Fair, it knew a Chapter 7 petition had been filed, knew the automatic stay was in effect, and knew that the State Fair had inadvertently mailed the check. The IRS continued to refuse to return the funds to the attorney representing the State Fair who stated he was waiting for an order from the bankruptcy court. The IRS then applied the funds, after the Chapter 7 petition had been filed, to a year in which no valid lien was on file—1985. Then, weeks later, the IRS reapplied the funds to tax year 1991, a year in which a valid lien had been filed.

**20.** Pl. 31 at 8.

**21.** 215 B.R. 543, 553 (Bankr.N.D.Ind.1997).

**22.** 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

**23.** *See e.g. In re Richardson*, 135 B.R. 256 (Bankr.E.D.Tex.1992) (Creditor who lawfully

The IRS is not entitled to adequate protection.

### D.  *Benefit to the estate*

■ The final argument of the IRS is that the funds do not have to be turned over because they do not provide a benefit to the estate. The IRS submits there are no creditors asserting liens senior to the federal tax lien, and no creditors asserting administrative priority claims. The IRS argues that the only potential administrative expense claimants are the trustee and his attorney. The IRS states that "[w]ithout a benefit to the estate, the Trustee and his attorney should not perform services nor incur expenses that result in a diminution of the value of property of a secured creditor".[24] The IRS contends that the trustee and his attorney may only be compensated for services that benefit the estate.

The court disagrees.

Section 704 of the Bankruptcy Code, entitled "Duties of trustee", states:

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest.[25]

In seeking the turnover of the $19,952.07, the trustee is performing his duties as required by the Bankruptcy Code.

In addition, the trustee (or the court if there is a conflict) has the duty of deciding whose claims are entitled to priority according to the Bankruptcy Code. The IRS just assumes it has a priority over the state tax lien. If the tax levy is invalid, and if the State of Louisiana filed its tax lien first in Jefferson Parish, there may be a question as to who has priority.

seized automobile prepetition was not required to turn over vehicle to debtor's estate because debtor did not carry automobile insurance and could not provide adequate protection.)

**24.** Pl. 31 at 13.

**25.** 11 U.S.C. § 704.

Further, it was the IRS that violated the automatic stay, requiring the trustee to defend the IRS's motion, and to seek to have the funds turned over to the debtors' estate. It is presumptuous of the IRS to attempt to argue there is no benefit to the estate in the trustee performing his duties under the Bankruptcy Code.

Finally, the IRS's argument is premature to the extent that the IRS is contending that there is no benefit to the estate for an administrative expense claim under 11 U.S.C. § 503, and that any fees do not comport with 11 U.S.C. § 330. Although the issue is premature, the court is inclined to the view that trustees and trustees attorneys performing their duties under the Bankruptcy Code do provide a benefit to the estate.

*An order will be entered requiring turnover of the $19,952.07.*