*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JEROME R. MIKULSKI; ELZETTA C. MIKULSKI, On
Behalf of Themselves and All Others Similarly
Situated,

              *Plaintiffs-Appellants,*

    *v.*

CENTERIOR ENERGY CORPORATION; FIRST ENERGY
CORPORATION; CLEVELAND ELECTRIC
ILLUMINATING COMPANY; THE TOLEDO EDISON
COMPANY,

              *Defendants-Appellees.*

No. 03-4486

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 02-02440; 03-00191; 03-00192; 03-07043
—Donald C. Nugent, District Judge.

Argued: February 4, 2005

Decided and Filed: January 26, 2006

Before: BATCHELDER and DAUGHTREY, Circuit Judges; O'KELLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Eric H. Zagrans, ZAGRANS LAW FIRM, Elyria, Ohio, for Appellants. Mitchell G. Blair, CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, for Appellees. **ON BRIEF:** Eric H. Zagrans, ZAGRANS LAW FIRM, Elyria, Ohio, Thomas R. Theado, GARY, NAEGELE & THEADO, LLC, Lorain, Ohio, Eben O. McNair IV, Daniel S. White, SCHWARZWALD & McNAIR, Cleveland, Ohio, for Appellants. Mitchell G. Blair, Colleen M. O'Neil, Tracy S. Johnson, Anthony J. LaCerva, CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, for Appellees.

    O'KELLEY, D. J., delivered the opinion of the court, in which BATCHELDER, J., joined. DAUGHTREY, J. (pp. 10-11), delivered a separate opinion concurring in part and dissenting in part.

_____

[*] The Honorable William C. O'Kelley, Senior United States District Judge for the Northern District of Georgia, sitting by designation.

---

**OPINION**

---

WILLIAM C. O'KELLEY, District Judge.  This appeal arises from four state court actions against the defendants that were separately removed to the U.S. District Court for the Northern District of Ohio.  The four cases were later consolidated to address the defendants' separately-filed motions for judgment on the pleadings after the court denied the separate motions to remand.

## I.    *Factual and Procedural History*

On January 22, 2002, plaintiffs Jerome R. Mikulski and Elzetta C. Mikulski filed an action (*Mikulski I*) against Centerior Energy Corporation ("Centerior") and First Energy Corporation (the successor company to Centerior) in Ohio's Cuyahoga County Court of Common Pleas.  The plaintiffs sought to represent a class of individual shareholders in Centerior who claim that they received inaccurate Forms 1099-DIV or equivalent substitutes as information statements[1] from the company in 1986.  The Mikulskis sought damages in the amount of what they claim to be overpaid federal and state taxes plus costs and attorneys' fees.

On October 30, 2002, the Court of Common Pleas directed the plaintiffs to clarify their calculation of the alleged error in the shareholder information statements.  On November 15, 2002, in response to this order, the plaintiffs served First Energy with a copy of their supplemental response to the interrogatory.  In the response, they disclosed that their claims for relief involved whether the defendants violated Section 312(n)(1) of the Internal Revenue Code.[2]  The response stated, in part:

> From its formation in 1986, [Centerior] deliberately and fraudulently manipulated its tax accounting practices over a period of years in order to artificially inflate its "earnings and profits" (fn. "A defined term under the Internal Revenue Code...) so that it would look more profitable to its investors.  This was vitally important to Centerior in 1986 because it needed to justify the recent merger of CEI and Toledo Edison.  In the process, however, Centerior defrauded some 200,000 shareholders who lost more than $35 million from being wrongly instructed by Centerior to pay too much in federal income taxes on their 1986 distributions alone.
>
> Centerior violated the Internal Revenue Code by doing what Section 312(n)(1) of the Code specifically forbids – *Centerior illegally included* in its earnings and profits calculations for 1986 (and subsequent years) *more than $1.5 billion of construction expenses* that its subsidiaries had incurred in 1984 and earlier.  Code Section 312(n)(1) states that no construction expenses incurred before January 1, 1985 may be considered in calculating a corporation's earnings and profits.

---

[1] Pursuant to 26 U.S.C. § 6042(a)(1), the defendants were required to file an information return with the Internal Revenue Service reporting payments of dividends aggregating $10 or more made to any person during any calendar year.  A company that furnishes an information return is required to give notice to the person who is the subject of the return by written statement under 26 U.S.C. § 6042(c) and is subject to a penalty, under certain conditions, for failure to comply with § 6042(a).  The IRS may instruct a corporation to deduct and withhold a specified amount of tax for dividends if the payee underreports or if there is a payee certification failure.

[2] Under Internal Revenue Code ("IRC") § 316(a), distributions to a company's shareholders constitute taxable dividends to the extent the corporation has earnings and profits as defined by § 312 at the time of the distribution.  Those distributions not paid from earnings and profits are returns of capital of the shareholders' basis in the stock; these are tax-free returns of capital when a corporation distributes more than its earnings and profits.

Pls.' Supplemental Resp. to Interrog. No. 1 of Defs.' Second Set of Interrogs. (Emphasis in original).

On December 13, 2002, the defendants removed the case to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1441(b). The defendants alleged that the plaintiffs' complaint raised a substantial federal question and that resolution of that question was essential to the resolution of the plaintiffs' claims, based upon the plaintiffs' supplemental response to interrogatories.

The plaintiffs filed three additional state law actions on December 31, 2002. *Mikulski II*, *Mikulski III*, and *Mikulski IV* assert identical theories of liability but implicate different tax years and different operating entities: Centerior Energy, Cleveland Electric, and Toledo Edison, the latter two being separate operating companies that together formed Centerior in 1986. Within thirty days of the service of the complaints in these three subsequent suits, each action was removed to the federal district court by the defendants.

On January 12, 2003, the plaintiffs moved to have the case remanded to the Cuyahoga County Court of Common Pleas, which motion was denied on February 28, 2003. The district court found that the plaintiffs' causes of action, although structured as breach of contract and fraudulent misrepresentation claims, raised a substantial federal question involving federal tax law. The plaintiffs' two subsequent motions for reconsideration were also denied. Additionally, the district court denied the plaintiffs' motions to remand *Mikulski II*, *III*, and *IV*.

On March 19, 2003, the defendants filed a motion for judgment on the pleadings on the grounds that the plaintiffs' actions were preempted under federal law expressly by 26 U.S.C. § 7422 and implicitly by the scope and complexity of the Internal Revenue Code. The matter was referred to Magistrate Judge Patricia A. Hemann for consideration of pretrial motions. Following extensive briefing, the magistrate judge issued a report and recommendation on June 3, 2003, which concluded that judgment on the pleadings should be granted and, to the extent that there were no distinguishing facts in the companion cases, judgment would also be appropriate in these matters. In the report and recommendation, the magistrate judge noted that the plaintiffs could have raised the issue with the Internal Revenue Service, could have filed for a refund, or could have pursued administrative remedies. The magistrate judge also noted that if the court allowed the lawsuit to proceed, it could open the floodgates of litigation in federal court to suits by every shareholder for misstatement of earnings and profits, by every employee for overstatements of earnings on W-2 forms by employers, and by every independent contractor against a payor on an overstated 1099 form under a theory of breach of implied or express contract or fraudulent misrepresentation. The report and recommendation noted that the Internal Revenue Code was enacted to avoid these types of actions and to allow an injured taxpayer to proceed for a refund directly against the government.

After the magistrate judge's report and recommendation in *Mikulski I*, the defendants moved for judgment on the pleadings in the companion cases. Because this suit and the three others filed by the plaintiffs had factual similarities, the cases were consolidated by the district court for final briefing. The plaintiffs agreed that the report and recommendation could be considered as having been entered in all four cases.

The plaintiffs objected to the report and recommendation on the grounds that it mischaracterized the claim as one for a tax refund and therefore erroneously concluded that the claims are preempted by federal tax laws. The plaintiffs also filed a motion for reconsideration of the order denying remand. The district court held a hearing on September 25, 2003 on the plaintiffs' objections to the report and recommendation. At the hearing, the plaintiffs primarily relied upon the Supreme Court decision in *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), stating that the Supreme Court stressed the need for complete preemption in removal cases. The plaintiffs alleged that there was no complete preemption, just mere presence of a federal statute in an action

that seeks relief only under state law, so there was no basis for removal jurisdiction to the federal courts. They stressed that their suit was based on state law claims for breach of contract and fraud and not that the defendants allegedly violated the Internal Revenue Code, which was not relevant. The defendants responded that the magistrate judge and the district court reached the correct result in relying on proper grounds to support removal jurisdiction.

Following oral argument, on October 6, 2003, the district court considered and rejected the plaintiffs' arguments for remand and adopted the magistrate judge's report and recommendation. Judge Donald C. Nugent stated that, construing the complaint in the light most favorable to the plaintiffs and accepting all of the complaint's factual allegations as true, he found the defendants were entitled to judgment on the pleadings. The district court also granted the defendants' motions for judgment on the pleadings in the three companion cases. The plaintiffs then filed this appeal.

## II.      *Standard of Review*

This court reviews a district court's decision of whether to dismiss for lack of federal subject matter jurisdiction *de novo*. *Dixon v. Ashcroft*, 392 F.3d 212, 216 (6th Cir. 2004) (citing *Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996)). The factual findings made by the district court in deciding a motion to dismiss, however, are reviewed only for clear error. *Dixon*, 392 F.3d at 216 (citing *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999) (abrogated on other grounds) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 161 (6th Cir. 1993))). The court reviews the district court's refusal to remand a case removed from state court *de novo*. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 200 (6th Cir. 2004) (citing *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000), and *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 338 (6th Cir. 1989)).

## III.      *Analysis*

In their briefs, the parties have outlined numerous issues addressing the motion to remand and the motion for judgment on the pleadings. This opinion will address only the former question: whether the district court erred in denying the plaintiffs' motions to remand, or, stated another way, whether the federal courts have jurisdiction over these lawsuits.

The district court premised its denial of the plaintiffs' motions to remand on the statement that the complaint relies upon the interpretation of the Federal Tax Code and Federal Tax Regulations and therefore raised a substantial question of federal law. The court found that the plaintiffs' suit was one for a tax refund and therefore must be pursued under 26 U.S.C. § 7422, which requires that a refund or credit be sought from the IRS before bringing suit against the defendants. The magistrate judge found particularly relevant the fact that, if a question of tax law were decided in state court, the federal government would not be bound by a judgment against the defendants. The magistrate judge's report and recommendation, approved and adopted by the district court, also raises the artful pleading doctrine.

### A.      *Artful Pleading and Preemption*

In the absence of diversity, a civil action filed in state court may be removed to federal court only if the claim "arises under" federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (citing 28 U.S.C. § 1441(b)). Whether the claim arises under federal law must be determined by applying the "well-pleaded complaint" rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)); *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 469 (6th Cir. 2003) (citing *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) and *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996)). A claim arises under federal law for jurisdictional purposes only if the plaintiff's statement of the cause of action on the face of its properly pleaded complaint affirmatively shows

that it is based on federal law. *Beneficial Nat'l Bank*, 539 U.S. at 6-8; *Caterpillar*, 482 U.S. at 392. The presence of a federal defense to a state law claim, even one relying on the preemptive effect of a federal statute, is insufficient to confer federal jurisdiction and will not provide a basis for removal. *Beneficial Nat'l Bank*, 539 U.S. at 6 (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) and *Taylor v. Anderson*, 234 U.S. 74 (1914)); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Franchise Tax Bd. of Calif. v. Constr. Laborers Vacation Trust for S. Calif.*, 463 U.S. 1, 9-12 (1983); *Musson Theatrical*, 89 F.3d at 1252.

The exception to this is the "artful pleading" exception to the well pleaded complaint rule. Under the artful pleading exception, when a plaintiff has carefully drafted the complaint to avoid naming a federal statute as a basis for federal jurisdiction, but the complaint is nonetheless based on such statute, the federal court will have jurisdiction.

In this case, the defendants have not shown that the plaintiffs seek relief under any federal statute but, instead, raise the artful pleading exception in their brief, arguing that the plaintiffs structured their complaint to avoid federal jurisdiction but that such jurisdiction would be appropriate because the case is based on federal tax law. The magistrate judge and the district court rely heavily upon airline passenger excise tax cases to preempt the plaintiffs' state law claims through 26 U.S.C. § 7422. *See Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409, *amended without substantive change*, 140 F.3d 849 (9th Cir. 1998) (in collecting excise tax from passengers, airlines act as agents for the IRS); *Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1203 (5th Cir.), *cert. denied*, 522 U.S. 950 (1997) (citing 26 U.S.C. § 4291 and *Kaucky v. Southwest Airlines Co.*, 109 F.3d 349 (7th Cir. 1997) (airlines act as government agents in collecting airline ticket excise taxes)); *Kaucky*, 109 F.3d at 351-52 (7th Cir.), *cert. denied*, 522 U.S. 949 (1997) (where Congress makes a private entity like an airline a collection agent for the IRS, the airline is treated as an employee of the IRS for § 7422 purposes). This reliance is misplaced.

In the airline cases, the preemption decisions were based on the court's finding that the defendant airline was acting as a collection agent of excise taxes for the Internal Revenue Service. No such finding has been made about the defendants in this case. Other courts, including district courts, recognize that the airline excise tax cases have limited applicability beyond their unique set of circumstances. *See In re Air Transp. Excise Tax Litig.*, 37 F. Supp. 2d 1133, 1137 (D. Minn. 1999) (distinguishing airline cases; refusing to preempt plaintiffs' claims for improper collection of excise taxes on air freight of Federal Express because elements of "true" tax refund claim not present).

The plaintiffs' state law claims do not fall within the express language of 26 U.S.C. § 7422, which would prevent recovery for failure to file a claim against the United States with the Internal Revenue Service. The plaintiffs' complaints center on the alleged inflation of the defendants' earnings and profits in violation of the Internal Revenue Code's § 312(n)(1), the over-reporting of taxable dividends to the plaintiffs and other taxpaying shareholders, and, as a result, the inducement of the plaintiffs and other shareholders to overpay their respective federal and state income taxes. Section 7422 does not apply to these complaints by its plain language; the plaintiffs do not complain of erroneous or illegal tax assessments or collections by the defendants.

The district court erred in adopting the report and recommendation's conclusion that, because the plaintiffs' damages are calculated in terms of overpaid income taxes, the plaintiffs' state law claims constitute federal income tax refund claims. When the plaintiffs filed their lawsuit in 2002, they could not file a claim against the United States for a refund for their 1986 taxes paid. The Internal Revenue Code limits refunds to the later of three years after the tax return was filed or two years after the tax was paid. 26 U.S.C. § 6511.

Not all claims that seek damages against the United States for overpayment of taxes are claims for the recovery of tax refunds, even though damages are measured in taxes. This court has often stated that the nature of a plaintiff's state law claims is not determined by the nature of his underlying damages. For instance, references to retirement plan benefits or assets are insufficient to convert a plaintiff's state law claims into federal ERISA claims for preemption purposes; the "reference to plan benefits was only a way to articulate specific, ascertainable damages." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) (citing *Wright v. Gen. Motors Corp.*, 262 F.2d 610, 615 (6th Cir. 2001)); *see also Husvar v. Rapoport*, 337 F.3d 603, 609 (6th Cir. 2003); *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1376 (Fed. Cir. 2000); *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997).

The Supreme Court has found complete preemption in only three classes of cases: Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1975 (ERISA), 29 U.S.C. §§ 1001 *et seq.*; and the National Bank Act, 12 U.S.C. §§ 38 *et seq.* *Beneficial Nat'l Bank*, 539 U.S. at 7-9. The Supreme Court has explained that it found complete preemption under the LMRA and ERISA because "the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Id.* at 7-8. The Court found preemption under the National Bank Act because Congress intended the federal cause of action to be the exclusive remedy, not because the Act merely created a federal cause of action. *Id.* at 9 n.5. The Court has not yet recognized complete preemption for damage claims caused by allegedly inaccurate tax reporting by corporations to their taxpaying shareholders, especially when the claim involves both federal and state income taxes. This court ruled likewise when it found that ERISA did not preempt a state tax refund claim. *Thiokol Corp. v. Roberts*, 76 F.3d 751 (6th Cir. 1996).

Courts must take care to avoid creating complete preemption beyond the three areas of law recognized by the Supreme Court. *See, e.g.*, *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). This circuit has recognized that complete preemption is a narrow rule for determining federal jurisdiction and has held that the National Flood Insurance Act, 42 U.S.C. § 4072, completely preempts state law because it explicitly confers "original exclusive jurisdiction" on the federal district courts. *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002). It has declined, however, to extend complete preemption to statutes that lack similar language. *See Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493 (6th Cir. 1999) (Airline Deregulation Act does not preempt state law race discrimination claim against airline); *Musson Theatrical*, 89 F.3d at 1253 (Airline Deregulation Act does not preempt state law fraud and misrepresentation claims against air freight carrier); *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256 (6th Cir. 1996) (Medical Device Amendments to Federal Food, Drug, and Cosmetic Act do not preempt state law negligence claims against pacemaker manufacturer); *Gustafson v. City of Lake Angelus*, 76 F.3d 778 (6th Cir. 1996) (Federal Aviation Act does not preempt city ordinance prohibiting seaplanes from operating on city lake).

The United States District Court for the Northern District of Ohio seems to be the first court in the country to find complete preemption in the Internal Revenue Code. If the district court were correct, it would federalize most state law claims that remotely address tax issues, such as suing one's accountant or tax preparer.

There is no reason for this court to conclude that Congress intended to create an exclusive federal remedy under the Internal Revenue Code for miscalculation of earnings and profits and misreporting of taxable dividends. As the Supreme Court has recognized, Congress knows how to enact exclusive private rights of action and expressly impose liability for private misconduct in the Internal Revenue Code in other areas, such as Section 6701. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77, 182-83 (1994). Congress has expressly provided non-exclusive federal private causes of action for violation of several sections of the

Internal Revenue Code, including Sections 7426(a)(1), 7431(a)(2), 7432, and 7434. *See In re Hawkins*, 224 B.R. 334, 337 (Bankr. E.D. La. 1998) (§ 7426(a)(1) is not an exclusive remedy for a person suing over an IRS levy). Four specific provisions of the Code indicate that Congress intended the private federal remedy to be exclusive: Sections 6110(j)(1)(B), 897(I)(4), 7433(a), and 7433(e). No such provisions for exclusive federal causes of action are set forth in Sections 312(n)(1) or 6042(c)). The language and legislative history of Section 7422 also indicate that Congress did not intend for the tax refund procedure to be the exclusive federal remedy for fraudulent dividend reporting causing shareholders to overpay their income taxes. *See* S. Rep. 89-1625, 89th Cong. 2d Sess. (1966), 1966 USCCAN 3676, 3681-82.[3] The intended purpose of Section 7422 was to protect government collection officers from being sued by taxpayers and to provide taxpayers with a means to obtain relief from improper collections by tax collectors. *Id.*

The plaintiffs did not artfully plead in their complaint to improperly avoid federal jurisdiction, nor are their claims completely preempted by federal law. For these reasons, this court finds that the district court erred in its decision that the plaintiffs' state law claims were federal tax claims preempted by 26 U.S.C. § 7422.

### B.          *Substantial Federal Question*

The district court also based its finding of removal jurisdiction on the substantial federal question doctrine. The Supreme Court in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), created the "substantial federal question" exception to the well-pleaded complaint rule. *Franchise Tax Bd. of Calif. v. Constr. Laborers Vacation Trust for S. Calif.*, 463 U.S. 1. Before the Supreme Court decided *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), some courts recognized two narrow exceptions to the well-pleaded complaint rule: the "substantial federal question" exception and the "complete preemption" exception. The defendants in this case originally based removal on the substantial federal question doctrine.

Under the substantial federal question doctrine, a state law cause of action actually arises under federal law, even though Congress has not provided a federal private right of action, "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd.*, 463 U.S. at 9 (citing *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921) and *Hopkins v. Walker*, 244 U.S. 486 (1917)). The mere presence of a federal issue in a state law cause of action, however, does not automatically confer federal question jurisdiction, either originally or on removal. In order to invoke the substantial federal question doctrine announced in *Franchise Tax Board*, this circuit held prior to the *Beneficial National Bank* decision that the federal question raised by the state law complaint must be: 1) substantial; 2) disputed; 3) of great federal interest; and 4) resolution of the federal question must be necessary to the resolution of the state law claim. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757-59 (6th Cir. 2000). The nature of the federal interest is vitally important. "[E]ven when there is [a private] cause of action, the use of a federal statute as an element of a state cause of action may or may not raise a substantial federal question depending upon the nature of the federal interest at stake in the case." *Miller v. Norfolk & W. Ry. Co.*, 834 F.2d 556, 562 (6th Cir. 1987) (citing *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 n.12 (1986)).

---

[3]In July 1996, Congress enacted 26 U.S.C. § 7434, which expressly creates a private right of action in favor of any taxpayer who is injured because another person or entity has willfully filed a fraudulent information return asserting that payments have been made to a taxpayer. All events giving rise to plaintiffs' cases preceded the enactment of Section 7434. Its enactment by Congress, however, is indicative of the fact that the legislative branch never intended for Section 7422 to create an implied right of action, much less to provide the exclusive remedy for fraudulent filing claims.

The Supreme Court first eroded the substantial federal question doctrine in its *Merrell Dow* decision. *Merrell Dow Pharm.*, 478 U.S. 804. In *Merrell Dow*, the Court held that federal question jurisdiction was not warranted in a state law negligence claim in which the plaintiff argued that the defendant was negligent under state law for misbranding a drug in violation of federal law. A substantial factor in the holding in *Merrell Dow* is the absence of a private federal cause of action for the violation of the federal law involved. In these circumstances, the violation of a federal statute, pleaded as an element of a state law cause of action, does not state a claim arising under federal law. "The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813. The Court implied that the congressional determination not to provide a private federal remedy for violation of a federal statute is "tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction." *Id.* at 814.

*Merrell Dow*, however, left uncertain whether the absence of a federal private cause of action precluded federal question jurisdiction.[4] The Supreme Court, in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, __ U.S. __, 125 S.Ct. 2363 (2005), provided clarification regarding the requirement of a federal private right of action for federal question jurisdiction. In *Grable & Sons*, the Court stated that *Merrell Dow* "should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." 125 S.Ct. at 2368 (internal citation omitted). The Court ruled that federal question jurisdiction existed in a quiet title action where the title claim depended on the resolution of whether the taxpayer was given adequate notice, as defined by federal law. *Id.* The meaning of that notice provision, according to the Court, was "an essential element of [the plaintiff's] quiet title claim, and . . . it appears to be the only legal or factual issue contested in the case." *Id.*[5] The Court also noted the strong interest of the federal government in the collection of delinquent taxes and the rarity of state title questions that would raise contested matters of federal law. *Id.* Clear in this case is that the key point under the analytical framework is the nature of the federal interest at issue.

The substantial federal question doctrine does not provide the federal courts with jurisdiction in this case. As this court held in *Long* and *Miller*, the federal question raised by the state law complaint must be substantial, and the mere presence of a federal statute as an element of the complaint does not necessarily confer jurisdiction under the doctrine. *Long*, 201 F.3d at 757-59; *Miller*, 834 F.2d at 562. Although the amended complaints and the responses to interrogatories mention federal tax law, the true issues in this case are breach of contract and fraudulent misrepresentation with damages measured in the amount of federal and state income taxes overpaid by the plaintiffs because of the allegedly false information provided to them. If a court were to analyze the merits of the case, it would engage in only insubstantial analysis or interpretation of

---

[4]The uncertainty regarding the private right of action requirement has resulted in some inconsistency within this court. In *Long*, the court noted that the Supreme Court's holding in *Merrell Dow* was unclear but read it as having "left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if resolution of that federal question is necessary to the resolution of the state-law claim." 201 F.3d at 759. In *Heydon v. MediaOne*, 327 F.3d 466 (6th Cir. 2003), however, the court found that federal question jurisdiction did not exist where the plaintiffs' claim was a state law claim for trespass and the federal law upon which they attempted to predicate jurisdiction did not provide a private right of action.

[5]Some courts have found that the Supreme Court removed doubt about the elimination of the substantial federal question doctrine as a basis for removal jurisdiction in *Beneficial National Bank*. The Court held that, absent diversity, there are only two ways a state claim can be removed to federal court: where Congress expressly provides or where complete preemption is present. *Beneficial Nat'l Bank*, 539 U.S. at 8. In *Grable & Sons*, however, the Supreme Court reinforced the viability of the substantial federal question doctrine.

federal law. The true questions at issue in the case involve fraud and misreporting to shareholders, both of which claims are governed by state statutes. For this reason, federal courts do not have jurisdiction over the case under the substantial federal question doctrine. While this court finds that these cases should have been remanded to the state court, we do not express any opinion on the merits of the claims under the laws of Ohio.

**IV.** *Conclusion*

This court finds that the federal district court lacked jurisdiction over the cases and erred in denying the plaintiffs' motions to remand. Such a decision pretermits discussion of the merits of the case. For this reason, the district court's decision is hereby REVERSED and REMANDED for action not inconsistent with this opinion.

---

### CONCURRING IN PART, DISSENTING IN PART

---

MARTHA CRAIG DAUGHTREY, Circuit Judge, *concurring in part and dissenting in part.* Although I agree with the majority's determination that the plaintiffs' state law claims are not preempted by § 7422 of the Internal Revenue Code, I disagree with the majority's conclusion that this case fails to present a substantial question of federal law sufficient to establish jurisdiction in federal court.

The majority correctly points out that the plaintiffs' claims turn on Centerior's failure to comply with § 312(n)(1) of the Code and do not fall within the language of the refund provision of § 7422. It is also evident that the plaintiffs are not suing to recover a tax or sum improperly collected; they are suing for tortious conduct, the damages for which may be measured by the amount of their overpayment of taxes. The plaintiffs' alleged overpayment to the IRS establishes a baseline for measuring their damages, but that amount may or may not represent the actual damage from the injuries alleged.

Section 7422 protects private entities that act as federal collection agents from returning an improperly collected tax out of their own coffers. However, defendant Centerior, unlike the defendant in *Brennan v. Southwest Airlines Co.*, 140 F.3d 849 (9th Cir. 1998), on which the magistrate and district court judge relied, did not collect the alleged overpayment. Therefore, the defendant here does not face the prospect of having to refund monies it paid to the IRS without any recourse, as was the case with Southwest Airlines, which had remitted the sums it collected to the IRS. Centerior merely reported payouts to shareholders that were the basis for taxes paid directly to the IRS by those shareholders.

Sixth Circuit precedent recognizes that federal jurisdiction is a "possibility . . . even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if resolution of that federal question is necessary to the resolution of the state-law claim." *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000). That would certainly appear to be the case here, especially in light of the Supreme Court's recent opinion in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, __ U.S. __, 125 S.Ct. 2363 (2005). There, the Court ruled that a state court action to quiet title raising the question of the meaning of the notice provision of the Internal Revenue Code for a seizure of property by the Internal Revenue Service warranted the exercise of federal jurisdiction. Specifically, it held that "[t]*he meaning of the federal tax provision* is an important issue of federal law that sensibly belongs in a federal court" because the government "has a strong interest in the prompt and certain collection of delinquent taxes, and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers . . . to satisfy themselves that the Service has touched the bases necessary for good title." *Id.* at 2368 (internal quotes omitted) (emphasis added). The *Grable* Court also noted both the relative rarity of such quiet-title actions and the likelihood that finding federal jurisdiction would "portend only a microscopic effect" on the allocation of the caseload between federal and state courts. *Id.*

Under *Grable*'s reasoning, the question of Centerior's compliance with Section 312(n)(1) of the Code, which is central to the plaintiffs' state law claim, also supports the district court's exercise of federal jurisdiction. In their complaint, the plaintiffs charged that the defendants "failed to follow and apply the structure and conceptual framework of the tax laws, as set forth in the Internal Revenue Code and the regulations promulgated thereunder." They also answered an interrogatory intended to clarify their claims with the statement that "Centerior violated the Internal Revenue Code by doing what . . . the Code specifically forbids . . . ." Furthermore, at oral argument

on the issue of federal jurisdiction before the district court, the attorney for the plaintiffs acknowledged that an analysis of the tax code is "critical" to the case and that a violation of the Code is not only the measure of damages but also the "underlying rationale for the fraud." The majority asserts that in analyzing the plaintiffs' claims, a federal court would "engage in only insubstantial analysis or interpretation of federal law," but this conclusion fails to recognize that determining whether the defendants complied with the Code is essential to a resolution of the plaintiffs' claims. The federal government's interest in the construction of a statute that controls how much tax security-holders must pay is surely as great as its interest in being able to collect delinquent taxes by seizing and selling properties.

It could be argued, of course, that a decision finding jurisdiction in this case might invite a flood of tax-refund suits masquerading as breach-of-contract claims in the federal courts – this case, after all, is based on IRS filings as far back as 1986. However, it is likely that the refund procedures in the Internal Revenue Code, in conjunction with state statutes of limitation, would act as a reasonable limit on the number of cases that were actually heard in federal court.

For these reasons, I concur in the majority's holding that the plaintiffs' state law claims are not preempted by federal law but dissent from the remainder of the opinion. I would affirm the district court's decision to deny the plaintiffs' motion to remand to state court, reverse the judgment dismissing the complaint on the merits, and remand the case to the district court for further proceedings.